**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                                :
DONNA FOX,                              :          CIVIL ACTION
                        Plaintiff,          :
                                                :
         vs                                  :          NO.  12-6841
                                                :
LIBERTY LIFE ASSURANCE COMPANY OF  :
BOSTON trading as LIBERTY MUTUAL and  :
CRAYOLA, LLC,                        :
                        Defendants.     :
_____:

Henry S. Perkin, M.J.                                                    March 26, 2014

**<u>MEMORANDUM</u>**

This case involves a claim asserted by Plaintiff, Donna Fox ("Ms. Fox"), seeking

short-term disability benefits under a self-insured short term disability plan sponsored by her

former employer, Crayola LLC ("Crayola").  Defendants have filed a motion for summary

judgment seeking dismissal of Plaintiff's claims for benefits.  Ms. Fox has also filed a motion for

summary judgment, arguing that the determination by Liberty Life Assurance Company of

Boston trading as Liberty Mutual ("Liberty Life") and Crayola denying her claim for benefits

under the Crayola Short-Term Disability Plan (the "Crayola STD Plan" or "the Plan") was

improper and should be overturned.  For the reasons that follow, each Motion will be granted in

part and denied in part.

**I.       <u>FACTS.</u>**[1]

Ms. Fox asserts a claim seeking short-term disability benefits under the "Crayola

_____
[1]          Defendants filed a statement of uncontested material facts in support of their motion for summary
judgment, and Ms. Fox did not file a response to that factual summation.  Accordingly, this Court adopts the facts as
set forth in Defendants' Motion and adds some additional information regarding Plaintiff's claimed physical ailments
and information taken directly from the Benefit Plan.

STD Plan," a self-insured short term disability plan sponsored by her former employer, Crayola. Ms. Fox has asserted claims against Crayola and Liberty Life, the Claims Administrator under the Plan, pursuant to §502(a)(1)(B) of ERISA.  See 29 U.S.C. §1132(a)(1)(B).  Crayola provides short term disability benefits for its employees through the self-insured Crayola STD Plan.  See June 12, 2013 Declaration of Beverly Vogel ("Vogel Decl.") at ¶2.  Ms. Fox was covered under the Crayola STD Plan as a result of her employment as a Logistics Coordinator with Crayola. See Compl. at ¶8.

Liberty Life is the designated Claims Administrator under the Crayola STD Plan. See Vogel Decl., Ex. 1, p. C-001 and C-004.  Liberty Life provides administrative services to Crayola in connection with the Crayola STD Plan pursuant to an Administrative Services Agreement between Crayola and Liberty Life.  Vogel Decl. at ¶3 & Ex. 2.  Those services include processing claims, investigating claims, and making recommendations for decisions concerning benefit eligibility and concerning disposition of appeals by a claimant from adverse benefit determinations.  Vogel Decl. at ¶3; Ex. 2, pp. C-032 to C-034.

A.    **Ms. Fox's Application for STD Benefits.**

Ms. Fox has had multiple medical problems: thyroid cancer, breast cancer, depression, anxiety, insomnia, hypothyroidism and Type 2 diabetes.  Pl.'s Br., p. 11.  On or about November 10, 2011, Liberty Life received notice of a claim by Ms. Fox for benefits under the Crayola STD Plan.  See June 11, 2013 Declaration of Paula McGee ("McGee Decl.") at ¶3; McGee Decl., Ex. A, p. LL-005.  According to the information received by Liberty Life, Ms. Fox commenced a leave of absence from her employment with Crayola on November 7, 2011 because of hypothyroidism, diabetes and depression.  McGee Decl., Ex. A, p. LL-008 (11/28/11

phone note).  Under the Crayola STD Plan, Ms. Fox was potentially eligible for up to 180 days of benefits from her date of alleged disability.  Vogel Decl., Ex. 1, p. C-001.

As part of its evaluation of Ms. Fox's eligibility for benefits, Liberty Life sent requests for medical records to Ms. Fox's various medical providers.  See McGee Decl., Ex. A, pp. LL-084 to LL-105.  Records received in response to those requests included treatment records from Dr. Yu Lee (McGee Decl., Ex. A, pp. LL-064 to LL-068); an attending physician statement completed by Dr. Lee on November 22, 2011 (McGee Decl., Ex. A, pp. LL-100 to LL-101); and records received from Dr. James Chiadis (McGee Decl., Ex. A, pp. LL-069 to LL-072).

Following its receipt of these records, Liberty Life forwarded the records to a Nurse Case Manager in its Managed Care Department for review and a determination of what restrictions and limitations were necessary based on the available records.  See McGee Decl., Ex. A , p. LL-006 (claim note 14).  In response to its request for a review of the medical records, on January 6, 2012, Nurse Karen McGuire, a Nurse Case Manager in the Managed Care Department, prepared a file note summarizing the results of her record review.  See McGee Decl., Ex. A, pp. LL-005 to LL-006 (1/6/12 MDS note).

In her summary, Nurse McGuire noted that Ms. Fox's records concerning her Type 2 diabetes did not provide any evidence as to a functional impairment, and that although Ms. Fox had been non-compliant with her diabetes medication at times, lab results showed an improvement in blood sugar levels.  Id.  Nurse McGuire also noted that recent records received from Dr. Lee concerning Ms. Fox's thyroid condition were unremarkable did not reflect any significant abnormalities other than some minor adjustments in medication levels.  Id.  With

3

respect to Ms. Fox's alleged depression, the records indicated that she was requested to follow-up with a psychiatrist, but no psychiatric appointment was noted. Id. Based upon these records, Nurse McGuire concluded that "due to the absence of significant objective findings, lack of escalation in treatment, and no increase in frequency of follow-up, impairment is not supported." Id.

On January 13, 2012, D. Snyder from Crayola emailed Kaitlynn Morgan of Liberty Life regarding Ms. Fox and stated "Kaitlyn, We are okay with you denying her claim. [T]hanks." See McGee Decl., Ex. A, pp. LL-062.

On January 17, 2012, Liberty Life issued a determination denying Ms. Fox's claim for benefits under the Crayola STD Plan. See McGee Decl., Ex. A, pp. LL-059 to LL-061. In its January 17, 2012 letter informing Ms. Fox of that decision, Liberty Life summarized the evidence received during the course of its administrative review, including the results of the record review completed by Nurse McGuire. The letter also summarized the principal duties associated with Ms. Fox's job as a Logistics Coordinator for Crayola, and concluded that, based on the medical information reviewed in light of those job requirements, Ms. Fox did not meet the Plan's definition of disability. See McGee Decl., Ex. A, p. LL-060. In the denial letter, Liberty Life also informed Ms. Fox of her right to pursue an administrative appeal from the determination denying her claim for benefits, and summarized the procedures to be followed in connection with any appeal. See McGee Decl., Ex. A, p. LL-061.

**B.     Ms. Fox's Appeal of Denial of Benefits.**

On February 2, 2012, Ms. Fox's attorney submitted a letter to Liberty Life appealing the decision denying her claim for benefits under the Crayola STD Plan. See McGee

Decl., Ex. A, p. LL-045.  Through counsel, Ms. Fox submitted additional medical records in

support of her appeal, including: (1) an attending physician's statement completed by Dr. Sunitha

Potluri, Ms. Fox's primary care physician (McGee Decl., Ex. A, pp. LL-027 to LL-050); (2)

some recent office visit notes from Dr. Potluri (McGee Decl., Ex. A, pp. LL-030 to LL-044); and

(3) an attending physician report from Dr. Thomas Gonzalez, a psychologist who saw Ms. Fox

for the first time on January 25, 2012, eight days after Liberty Life issued it's denial letter.

(McGee Decl., Ex. A, pp. LL-048 to LL-049.)

        After receipt of Ms. Fox's appeal letter and additional medical records, Liberty

Life contacted Ms. Fox's attorney to confirm that he had submitted all additional medical records

he intended to submit in support of the appeal.  See McGee Decl., Ex. A, p. LL-003.  Once such

confirmation was received, Liberty Life's Disability Case Manager referred Ms. Fox's file to

Liberty Life's Managed Care Department for a second record review by a Nurse Case Manager.

See McGee Decl., Ex. A, p. LL-002 (claim note 28).

        On July 18, 2012, Nurse Case Manager Tricia Damone prepared a claim note

summarizing the results of her review of Ms. Fox's records, including those submitted in support

of her appeal.  See McGee Decl., Ex. A, p. LL-002 (7/18/12 MDS note).  In her claim note,

Nurse Damone expressed an overall view that, based on the medical records provided on appeal,

there was a "lack of condition severity, worsening condition or impairment present to identify

[restrictions/limitations] from either a physical or [mental/nervous] standpoint."  Id.  Nurse

Damone further noted that there was no evidence "to indicate a functional impairment" and with

respect to Ms. Fox's physical and mental conditions, the records "submitted on appeal do not

suggest a level of functional impairment from either a physical or [mental/nervous] standpoint

5

that would warrant" restrictions or limitations.  Id.

Following receipt of the record review summary from Nurse Damone, Liberty Life's Disability Case Manager referred Ms. Fox's file to Liberty Life's appeals review unit for disposition of her appeal.  See McGee Decl., Ex. A, p. LL-001 (claim notes 30-33).

On July 27, 2012, Bonnie Dube, an Appeal Review Consultant in the Group Benefits Department for Liberty Life sent an email to D. Snyder of Crayola at 10:35 a.m., regarding "std appeal uphold recommendation Fox 3045366 Crayola LLC" in which she stated "Hello, Please see the attached recommendation to uphold the denial on appeal review.  Please kindly let me know if you are in agreement.  If so I will send written notification to the employee's attorney representation.  Thank you."  See McGee Decl., Ex. A, p. LL-013.  In response, D. Snyder of Crayola responded at 11:03 a.m. that "Hello, Yes we are in agreement. [t]hanks."  Id.

On July 27, 2012, Liberty Life sent counsel for Ms. Fox a letter advising that on behalf of Crayola, it was upholding the denial of short term disability benefits to Ms. Fox under the Crayola STD Plan based on its conclusion that Ms. Fox was not suffering from any condition which would preclude her from performing the duties of her own Logistics Coordinator job.  See McGee Decl., Ex. A, pp. LL-015 to LL-018.

C.      **The Plan Documents**.

The Crayola STD Plan identifies Liberty Mutual as the Claims Administrator "who is acting on behalf of the Plan Administrator, Crayola."  Vogel Decl., Ex. 1, p. C-004.  The Plan further provides that "satisfactory Proof of loss must be provided to the Claims Administrator, on behalf of the Plan Administrator, no later than 30 days after the end of the

Waiting Period." <u>Id.</u>, p. C-012.  The Plan specifically defines what a claimant must submit as

proof of claim, as follows:

> Your Proof of claim, provided at your expense, must show:
>
> • That you are under the regular care of a doctor;
> • The date your disability began;
> • The cause of your disability;
> • The extent of your disability, including restrictions and limitations preventing you from performing your own job; and
> • Your continuing abilities, including the duties of your own job which you are able to perform;
> • The name and address of any hospital or institution where you received treatment, including all attending doctors;
> • Objective medical evidence of your disability that is satisfactory to us.

<u>Id.</u> at C-011.  The Plan specifically states that "the Claims Administrator, on behalf of the Plan

Administrator, reserves the right to determine if your Proof of loss is satisfactory."  <u>Id.</u>  The Plan

further states that:

> The Claims Administrator is delegated the duties of the Plan Administrator to:
>
> • Approve and deny applications for benefit payments, review certifications of disability and determine benefits payable according to the terms and conditions of the Plan; and
> • Make payment for benefits payable.
>
> **However, the Plan Administrator has the responsibility for deciding appeals of claims, which were initially denied by the Claims Administrator, and making final determinations regarding eligibility for coverage.**  The Claims Administrator will also assist with return to work planning.

<u>Id.</u> at C-014 (emphasis added).


## II.   <u>PROCEDURAL HISTORY</u>.

On December 6, 2012, Ms. Fox, through her counsel, filed a Complaint against

Liberty Life and Crayola in this Court, seeking judicial review of the denial of short term

disability benefits.  The parties consented to trial before the undersigned pursuant to 28 U.S.C. §

636 (c) on January 4, 2013, and the consent was approved and case transferred on January 7,

2013, by Order of the Honorable James Knoll Gardner.  See Document Nos. 5, 7.  A conference

pursuant to Federal Rule of Civil Procedure 16 was held on April 3, 2013, and Rule 16

Scheduling Order was entered on April 11, 2013.  See Document No. 13.  Defendants filed their

Motion for Summary Judgment, Memorandum in Support of the Motion and Statement of

Uncontested Material Facts in Support of the Motion on June 17, 2013.  See Document Nos. 14,

15, 16.  Ms. Fox did not respond to Defendant's Motion, but rather filed her own Motion for

Summary Judgment on June 19, 2013.  See Document No. 21.  Defendant's Response Brief in

Opposition to Plaintiff's Motion was filed on July 7, 2013.  See Document No. 22.


**III.**   **LEGAL STANDARD.**

   **A.**   **Summary Judgment Standard.**

   Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary

judgment is proper "if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The essential

inquiry is "whether the evidence presents a sufficient disagreement to require submission to the

jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986).  The moving party has the initial burden of

informing the court of the basis for the motion and identifying those portions of the record that

demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S.

8

317, 323 (1986).  An issue is genuine only if there is a sufficient evidentiary basis on which a

reasonable jury could find for the non-moving party.  Anderson, 477 U.S. at 249.  A factual

dispute is material only if it might affect the outcome of the suit under governing law.  Id. at 248.

   The adverse party must raise "more than a mere scintilla of evidence in

its favor" in order to overcome a summary judgment motion and cannot survive by relying on

unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of W.

Chester, 891 F.2d 458, 460 (3d Cir. 1989)(citing Celotex, 477 U.S. at 325).  To establish "that a

fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions,
> documents, electronically stored information, affidavits or declarations,
> stipulations (including those made for purposes of the motion only), admissions,
> interrogatory answers, or other materials; or

> (B) show[ ] that the materials cited do not establish the absence or presence of a
> genuine dispute, or that an adverse party cannot produce admissible evidence to
> support the fact.

Fed. R. Civ. P. 56(c)(1).  The "existence of disputed issues of material fact should be ascertained

by resolving all inferences, doubts and issues of credibility against" the movant.  Ely v. Hall's

Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotations omitted).

   When addressing cross-motions for summary judgment, "[t]he court must rule on

each party's motion on an individual and separate basis, determining, for each side, whether a

judgment may be entered in accordance with the Rule 56 standard."  Schlegel v. Life Ins. Co. of

N. Am., 269 F. Supp.2d 612, 615 n.1 (E.D. Pa. 2003)(quoting 10A Charles A. Wright, Arthur R.

Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (1998)).

**B.**    **ERISA Standard of Review.**

Before addressing the merits of the parties' cross-motions for summary judgment, the Court must first consider the applicable standard of review to apply on review of Defendants' decision to deny Ms. Fox benefits under the Crayola STD policy.

A claim brought pursuant to § 1132(a) (1)(B) "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 114, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Where the plan has delegated discretionary authority, the Court reviews the plan administrator's decision to deny benefits for abuse of discretion. Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 128 S.Ct. 2343, 2348, 171 L. Ed.2d 299 (2008); see also Conkright v. Frommert, ⸺ U.S. ⸺, ⸺, 130 S.Ct. 1640, 1644, 176 L.Ed.2d 469 (2010) ("an ERISA plan administrator with discretionary authority to interpret a plan is entitled to deference in exercising that discretion.").

In this case, Ms. Fox argues that the standard of review which this Court should apply is a *de novo* standard. Liberty Life contends, however, that the correct standard of review is an abuse of discretion standard.

1.    Deferential "Arbitrary and Capricious" Standard of Review.

In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the Supreme Court held that where a benefit plan affords the administrator discretionary authority, the administrator's interpretation of the plan "will not be disturbed if reasonable." 489 U.S. at 114. The Third Circuit has interpreted this standard as permitting a decision by a plan administrator to be overturned only if the court concludes that the decision is "arbitrary and capricious." Dewitt

v. Penn-Dell Directory Corp., 106 F.3d 514, 521 (3d Cir. 1997); Mitchell v. Eastman Kodak Co.,

113 F.3d 433, 439 (3d Cir. 1997).  Under the arbitrary and capricious standard, a district court

"may overturn a decision of the plan administrator only if it is 'without reason, unsupported by

the evidence or erroneous as a matter of law.'"  Abnathya v. Hoffman-LaRoche, Inc., 2 F.3d 40,

45 (3d Cir. 1993) (quoting Adamo v. Anchor Hocking Corp., 720 F.Supp. 491, 500 (W.D. Pa.

1989)).  This scope of review is narrow, and a court "is not free to substitute its own judgment

for that of [the administrator] in determining eligibility for plan benefits."  Id. (quoting Lucash v.

Strick Corp., 602 F.Supp. 430, 434 (E.D. Pa. 1984)).

> 2.      De Novo Standard of Review.

Ms. Fox argues that the language in the Crayola STD Plan is insufficient to confer

discretionary authority on Crayola and Liberty Life to make benefit determinations, and that a *de

novo* standard of review should be applied in this case.  See Ms. Fox's Br., pp. 8-10.  She

specifically argues that:

> There is NOTHING in the Plan documents that explicit say that the plan's
> determinations are only to be reviewed for abuse of discretion.  Hence, the
> Defendants are not in a position to claim that the Plan explicitly limits judicial
> review to a deferential standard.  Hence, the Defendants must argue that the plan
> by necessary implication limits de novo review.

Pl.'s Mot., p. 8.

> 3.      Applicable Standard of Review in this Case.

The Crayola STD Plan contains language sufficient to trigger applicability of the

deferential "arbitrary and capricious" standard of review in this case.  Specifically, the Plan

identifies Liberty Mutual as the Claims Administrator "who is acting on behalf of the Plan

Administrator, Crayola."  Vogel Decl., Ex. 1 at page C-004.  The Plan further provides that

"satisfactory Proof of loss must be provided to the Claims Administrator, on behalf of the Plan Administrator, no later than 30 days after the end of the Waiting Period." <u>Id.</u> at page C-012. Further, the Plan specifically states that "the Claims Administrator, on behalf of the Plan Administrator, reserves the right to determine if your Proof of loss is satisfactory." <u>Id.</u>  The Plan further states that "the Claims Administrator is delegated the duties of the Plan Administrator to '[a]pprove and deny applications for benefit payments, review certifications of disability and determine benefits payable according to the terms and conditions of the Plan.'" <u>Id.</u> at page C-014.  The Plan also specifically defines what a claimant must submit as proof of claim, as follows:

> Your Proof of claim, provided at your expense, must show:
>
> • That you are under the regular care of a doctor;
>
> • The date your disability began;
>
> • The cause of your disability;
>
> • The extent of your disability, including restrictions and limitations preventing you from performing your own job; and
>
> • Your continuing abilities, including the duties of your own job which you are able to perform;
>
> • The name and address of any hospital or institution where you received treatment, including all attending doctors;
>
> • Objective medical evidence of your disability that is satisfactory to us.

<u>Id.</u> at p. C-011.  Viewed in the aggregate, the Plan language set forth above appears sufficient to vest Liberty Life and Crayola with the discretion to construe the terms of the Plan and to determine benefit eligibility.   However, a thorough review of the Plan language and the emails

12

between Crayola and Liberty Life reveal that Crayola has the ultimate discretion to uphold a denial of claimed benefits on review.  Thus, the standard of review which will be employed is *de novo*.  The Plan Administrator has the responsibility for deciding appeals of claims, which were initially denied by the Claims Administrator, and making final determinations regarding eligibility for coverage.  See C-014.  This course of conduct was followed in this case as evidenced by two emails between Liberty Mutual and Crayola employees.  The first email, dated January 13, 2012, is authored by Crayola employee D Snyder and is addressed to Kaitlynn Morgan of Liberty Mutual and states "Kaitlyn, We are okay with you denying her claim. thanks."  See LL-062.  A second email from Bonnie Dube at Liberty Mutual and D. Snyder of Crayola on July 12, 2012, states the following: "[p]lease see the attached recommendation to uphold the denial on appeal review.  Please kindly let me know if you are in agreement.  If so I will send written notification to the employee's attorney representation."  See LL-013.  In response, D. Snyder stated 25 minutes later that "Yes, we are in agreement.  thanks."  Id.

The plan language and the emails contained in the case file show that Liberty Mutual did not have the ultimate discretion in deciding whether benefits should be awarded. Instead, it appears that the Plan Administrator, Crayola, had the decision-making authority to deny benefits.  Accordingly, we will apply the *de novo* standard of review in determining whether Plaintiff was properly denied STD benefits under the Policy.

IV.   **DISCUSSION.**

A.   **The Email Written By Ms. Fox's Supervisor More Than a Year Prior to Fox's November, 2011 Leave of Absence.**

In examining this case using a *de novo* standard of review, this Court is not

13

restricted to considering only the documents contained in Ms. Fox's claims file.  Instead, we

shall also consider evidence outside of the record.  Ms. Fox proffers an email on which she was

presumably wrongly copied as support for her claim.  The email is dated 12 months and two days

prior to Ms. Fox's leave commencement date of November 7, 2011.  In the November 5, 2010

email, Ms. Fox emails another employee, Jeff Erdie, and comments on his October, 2010 report

as follows "Opus didn't do any cycle counts for October on Item 0456990950. Sorry for all these

emails . . . but your information is upsetting me.  I think there is something wrong with your

report?"  Pl.'s Br., Ex. A.  Three minutes after she sent that email, Ms. Fox emailed Charles

Becker and her supervisor, Shelia Lieberman, regarding the report and her conclusion that it was

erroneous.  Ms. Fox also comments on the reaction which she perceives another employee named

Craig will have to the erroneous report, "Something isn't correct with Jeff's report?  I feel close

enough to Jeff to let him know how much his info is upsetting me.  I am sure I will hear from

him first thing Monday morning.  Glad Craig isn't here to see this info; he would be having a

'yellow canary bird' in short order."  Id.  Based on that email, Shelia Lieberman, Ms. Fox's

supervisor, wrote to two other individuals:

> I feel that Donna will be a problem next week, really going to need HR support.
> She is over the top.  I went to lvip today because Connie was about to walk out.  I
> kept her calm on a busy Friday and stayed there tonight later than I wanted to be.
> Very disappointed with Donna.  Before I could ask her to go to lvip she was going
> to the doctor.  She needs to be out on disability again or just gone.

Id.  Based on the content of Shelia Leiberman's email, it does not appear that she intended to

send a copy to Ms. Fox, and may, in fact, have sent her a copy in error.  In her brief, Ms. Fox

places a great deal of reliance on this email sent by her supervisor.  Pl.'s Br., pp. 1, 4, 11; Ex. A.

Ms. Fox contends that this email caused her to become more depressed and to seek medical

attention.  Defendants contend that Ms. Fox's reliance on this email as evidence supporting her claim for disability benefits for a leave which began more than a year later is misplaced because they contend the email is inadmissible and irrelevant.

Ms. Fox correctly points out in her brief that there is a reference to this email in one of the office visits note of her treating physician.  Pl.'s Br. at 4.  Ms. Fox did not, however, submit a copy of this email in support of her administrative appeal and she has proffered no explanation as to why this email, which she now says is so significant to her claim, was not submitted in support of her disability claim to Liberty Life during the administrative appeal process by her or her counsel, who is the same counsel representing her in this litigation.

Contrary to Ms. Fox's characterization of the email, Ms. Lieberman did not say in the email that "Ms. Fox was disabled and could not perform the job because of her disability." Pl.'s Br., p. 4.  Rather, the email expresses no opinion whether Ms. Fox is disabled.  It does, however, express the frustrations of a supervisor trying to cope with the behavior of employees in her department.  After noting that prior to asking Ms. Fox to go to help at the lvip location because they were very busy, Ms. Fox told her that she was going to the doctor [and presumably would not be at work so was unavailable to help], Ms. Lieberman says that Fox "needs to be out on disability again or just gone."  Pl.'s Br., Ex. A.  Defendants argue, and this Court agrees, that Ms. Lieberman's statement of frustration does not qualify as an opinion that Ms. Fox meets the definition of disability under the Crayola STD Plan.

Finally, Defendants argue that, as an operational supervisor, Sheila Lieberman played no role in the determination of whether Ms. Fox met the definition of disability under the Plan in November, 2011.  A review of the administrative record shows that other than

completing a form listing the principal job duties and physical requirements of Ms. Fox's

Logistics Coordinator position (LL-051 to LL-052), Ms. Lieberman was not involved in any

aspect of the administrative review process concerning Ms. Fox's claim for benefits.  Liberty

Life was responsible for that review process, and there is no evidence that Ms. Lieberman's

views about Ms. Fox which were expressed a year prior to the relevant time period were ever

communicated by anyone at Crayola (including Ms. Fox) to Liberty Life.

> **B.**   **Ms. Fox Fails to Show That The Determination Denying Her Claim For Benefits Under The Crayola STD Plan Was Influenced By Any Actual or Theoretical Conflict of Interest.**

Ms. Fox suggests that the administrative determination denying her claim for

benefits should be accorded less deference because of Crayola's dual rule as the entity who

makes the final appeal determinations regarding benefit eligibility and the party who pays

benefits when a person is found to be eligible.  See Pl.'s Br. at 12.  Although the Supreme Court

has ruled that an administrator's dual rule as decision-maker and payor of benefits is a factor that

should be taken into account by a reviewing court, the record in this case reflects the type of

administrative process designed to insure "accurate claims assessment" which should outweigh

any theoretical conflict of interest which may exist.  See Metropolitan Life Insurance Co. v.

Glenn, 554 U.S. 105, 116-118 (2008).  Ms. Fox points to no evidence that supports her assertion

that the structural conflict resulting from the self-insured nature of the Crayola STD Plan played

any role in the decision denying her claim for benefits.

Under the Crayola STD Plan, the initial claim determination concerning benefit

eligibility was made by Liberty Life, acting on behalf of the Plan Administrator.  Vogel Decl.,

Ex. 1, p. C-011.  Liberty Life was also responsible for making a recommendation for disposition

of appeals.  Id. See also McGee Decl., Ex. A, p. LL-001 (claim note 36).  In performing these functions, Liberty Life was acting as a third-party administrator with no financial incentive to deny claims.  The administrative services agreement establishing Liberty Life's compensation for its claim administration services shows that Liberty Life is paid a monthly "per participant" fee, and that its compensation is not affected by whether claims are granted or denied.  See Vogel Decl., Ex. 2, p. C-037.  The role played by Liberty Life, a neutral third-party administrator, at the initial determination and appeal levels of the administrative procedure is a factor which should be viewed as ameliorating any financial conflict created by the self-insured nature of the Plan. Stratton v. E.I. DuPont de Nemours & Co., 363 F.3d 250, 254-255 (3d Cir. 2004) (holding that the intervention of a neutral decision-maker at the first level of review reduces the opportunity for a conflict of interest to affect the outcome of the process). Accord, Post v. Hartford Ins. Co., 501 F.3d 154, 164 (3d Cir. 2007).

Although under Glenn, the theoretical structural conflict posed by the self-insured nature of the Crayola STD Plan is a factor which this Court may consider in reviewing the decision denying Ms. Fox's claim, this factor is entitled to little weight due to the absence of any evidence showing that this conflict played a role in the decision to deny Ms. Fox short-term disability benefits.  It is also entitled to little weight due to the involvement of Liberty Life, a neutral third-party administrator, in all aspects of the administrative review process regarding Ms. Fox's claim for benefits.

C.     **Whether An Evidentiary Basis Exists for Disturbing the Administrative Determination that Ms. Fox was Capable of Performing the Duties of Her Logistics Coordinator Position Notwithstanding Her Physical or Mental Conditions.**

The principal reasons underlying the administrative decision denying Ms. Fox's claim for short term disability benefits are described in the letters sent by Liberty Life to Ms. Fox or her counsel.  The January 17, 2012 letter sent to Ms. Fox informed her of the initial determination denying her claim for benefits, and the July 27, 2012 letter sent to Ms. Fox's counsel informed him of the adverse decision concerning Ms. Fox's administrative appeal.  See McGee Decl., Ex. A, pp. LL-059-061 (1/17/12 letter); LL-015-018 (7/27/12 letter).  In these letters, Liberty Life provided Ms. Fox with a description of the administrative review process which had been completed by Liberty Life, and set forth a detailed analysis of the evidence and other material relied upon by Liberty Life in reaching its conclusion.

In its January 17, 2012 letter to Ms. Fox informing her of its decision, Liberty Life summarized the results of the record review which had been completed by its Nurse Case Manager which expressed an overall opinion that there were no clinical records on file sufficient to support a conclusion that she suffered from functional impairments or restrictions which prevented her from performing her job duties.  LL-058.  The January 17, 2012 letter also summarized the principal job duties and physical requirements of Ms. Fox's Logistics Coordinator position and noted that based upon the review of Ms. Fox's medical records by the Nurse Case Manager, Ms. Fox was capable of performing those duties notwithstanding her physical or mental conditions.  Id.  The letter from Kaitlynn Morgan, Disability Case Manager, specifically stated:

18

You submitted a claim for diabetes, hypothyroidism and depression.  Your claim contains the following medical information:

• Sacred Heart Laboratory Report dated November 16, 2011
• Attending Physicians Statement completed by Dr. Lee dated November 22, 2011
• A treatment note by Dr. Lee dated November 22, 2011
• Treatment notes provided by North Hampton Medical dated November 4, 2011, November 16, 2011, December 2, 2011

Treatment notes currently on file show you have history of multiple medical conditions and are taking numerous medications.  Office visit notes from November 22, 2011 by Dr. Lee note you are feeling tired and report being too weak to work.  Exam findings are unremarkable with the exception of being weak in appearance.  A laboratory report dated November 16, 2011 reveals elevated blood sugar, cholesterol and triglyceride levels, as well as abnormal thyroid levels.  An adjustment in dosage is made for hyperthyroidism and other medications are resumed.  You were advised to send in blood sugar level readings, follow up with a psychiatrist if needed and additional labs would be done in February 2012.  Treatment notes from November 4, 2011 show you were seen for anxiety, your thyroid and body aches.  Test results show your blood pressure was elevated and your medication was adjusted accordingly.  At your next office visit on November 16, 2011, treatment notes show improvement in your blood pressure with no other significant exam findings noted.  Treatment notes dated December 2, 2012 show you were seen for a travel consult for a trip to Mexico.

To ensure a thorough consideration of your claim [f]or benefits, your file was reviewed by a Nurse Case Manager (NCM) in our Managed Disability Service Department.  Based on the current medical records on file it was determined by your reviewer that, while you are treating for chronic medical conditions for which you have routine follow ups and laboratory work completed, there is no clinical evidence notes to indicate a functional impairment to preclude you from performing your job duties.  It is expected that medication for diabetes and thyroid would be adjusted according to laboratory work, however that in and of itself does not support functional impairment.  In addition, the totality of your records shows an improvement in your blood sugar levels.  While treatment notes show you report treating for depression and anxiety, there are no objective findings noted or treatment notes provided by Dr. Gonzalez.  Therefore, the available clinical records on file are insufficient to support functional impairment or restrictions that would prevent you from performing your job duties.

Your job as a logistics coordinator requires you to maintain inventory accuracy, reconcile cycle counts and receiving discrepancies, ensure constant flow of

customer orders outbound and raw materials inbound, and direct material handler work force to support daily shipping, receiving, warehousing and production procedures.  Physical requirements of your job include constant sitting, occasional standing, walking and lifting up to 25 lbs.

Based on the medical information in relation to your job requirement, you do not meet your Plan's definition of disability, and we must deny your claim for benefits.

See LL-060.  Likewise, in the July 27, 2012 letter sent by Appeal Review Consultant Bonnie

Dube, Liberty Life summarized the results of the second round of medical record reviews which

had been completed by a different Nurse Case Manager in its Managed Care Department, and

described the overall conclusion reached by that reviewer that Ms. Fox's physical and/or

emotional conditions did not prevent her from performing the principal duties associated with her

Logistics Coordinator position. McGee Decl., Ex. A, pp. LL-016-017.  That letter specifically

stated the following:

According to our records, your reported date of disability was November 7, 2011. You filed a claim for hypothyroidism and diabetes.  No benefits were approved. The basis for the denial of benefits was outlined in our letter of January 17, 2012. A disability nurse case manager reviewed your medical file and opined,

*The records show a claimant with a history of multiple medical conditions who has been under the care of Dr. Lee, Endocrinology since at least 11/22/11 due to diabetes and status post thyroid cancer.  She is taking multiple medications.  Her past history includes depression/anxiety for which she is on a low dose antidepressant.  Office visit notes dated 11/4, 11/16 and 12/2, 2011 from her primary care physician, (name not available) reveal the claimant was seen due to anxiety, thyroid and body aches on 11/4/11 in which her blood pressure was elevated at 164/100 and her medication was adjusted.  Improvement was noted at the next office visit on 11/16/11 with a reading of 128/80.  On the 12/2/11 office visit the claimant was seen for travel consult as she is going to Mexico.*

*Office visit note dated 11/22/11 by Dr. Lee notes the claimant reports feeling tired, she is teary and reports being woo weak to work.  Exam findings are unremarkable with the exception of being weak in appearance.  Labs dated 11/16/11 reveal elevated blood sugar level, cholesterol and triglyceride levels and*

*abnormal thyroid levels.  The claimant reported stopping one of her diabetes medications and forgetting to take her insulin at times.  She is advised to send in blood sugar readings and medications are resumed.  Adjustments in dose are made for hypothyroidism.  Additional labs will be done in February, 2012.  The claimant was asked to follow up with a psychiatrist if needed. (no appointment noted).  Advised to maintain thyroid medications as abnormal thyroid levels can increase depressive symptoms.  She is to follow up in 3 months.  Although the claimant is treating for chronic medical conditions for which she has routine follow up and labs, there is no evidence notes to indicate a functional impairment. She has been non-compliant with her diabetes medication at times yet labs actually show an improvement in her blood sugar levels.  It is expected that medications for diabetes and thyroid would be adjusted according to lab work. Although the claimant reported depression/anxiety there are no objective findings noted.  No changes were made to her medication which is low dose.  She was advised to follow up with psychiatry if needed but there is no evidence the claimant was seen.  Therefore, due to the absence of significant objective findings, lack of escalation in treatment, and no increase in frequency of follow up; impairment is not supported.*

Your claim was denied based on the above review of your medical records; and the absence of clinical documentation to support the definition of disability, in relation to your own job as a logistics coordinator.  You were given the opportunity to submit any additional medical information that may support disability for your appeal review.  In your denial letter your disability claim case manager stated if you wish to appeal please provide "all documentation that shows specific restrictions and limitations which would preclude you from performing the material and substantial duties of your occupation.  This includes clinical evidence to support these restrictions and limitations, such as office treatment notes, test results, surgical or consultation reports, pharmacy records, psychological and psychiatric assessments and testing, therapy records any and additional records which we do not already have on file, from all your treating providers, from approximately October 2011 to the present; and any other pertinent information, which you feel will support your claim."

We received your full appeal request on June 12, 2012.  A disability nurse case manager reviewed your medical file on appeal and opined,

*All medical evidence is reviewed on appeal.  The employee has a history of diabetes and thyroid disorder ( status post thyroidectomy 2002), treats with Dr. Leo, endocrine and takes medication to control the above conditions.  New records received from Dr. Potluri ( primary care) are dated 1/12. 1/19 and 2/6, 2012.  Per the 1/12 office visit, the employee is status post an emergency dept. visit for UTI, (urinary tract infection), almost completed antibiotics and reported*

*improvement in symptoms (no records from emergency dept. visit available).
Exam findings are unremarkable. Treatment plan included increase in mood
stabilizer with refill of anti-anxiety medication, and recommendation of
psychiatric consult for reported ongoing anxiety and depression. Per the 1/19/12
office visit with her primary care, the employee reported anxiety due to job
termination/workplace stressors. Her doctor noted the employee to be tearful.
Exam findings again are unremarkable. The updated plan included a
prescription for an acid-reducing medication, anti-anxiety medication for sleep,
thyroid medication refilled, and again her primary care physician recommended
psychiatric consult. Per the 2/6/12 office visit the employee presented with right
shoulder pain since January 2012 ( no mention of shoulder condition in previous
office visit notes, and no further workup noted in the records); the employee felt
she had a urinary tract infection ( no indication of urine testing). The employee
reported difficulty sleeping, and ongoing anxiety. The employee had not
consulted with psychiatry as instructed, however, consulted with a lawyer
regarding disability/workplace issues. Exam findings again are unremarkable
with no findings pertaining to shoulder or a mental/nervous condition. Updated
treatment plan included a prescription for a sleep medication and a muscle
relaxer as needed, and instructed on relaxation techniques; continue following
with Dr. Lee for thyroid and diabetes and the primary care physician again
strongly recommended the employee consult with psychiatry. Physician statement
form completed by Dr. Potluri dated 2/9/12 indicated first office visit on 1/6/12
and last office visit on 2/6/12, diagnoses and medications listed and
recommendation to follow up with psychiatry again reinforced. No further
records available from Dr. Lee or Dr. Potluri. Physician statement f[or]m dated
1/25/12 from T. Gonzalez, social worker is difficult to read, however indicates
first office visit was 1/25/12 and frequency of visits is weekly for counseling.
Gonzalez opined the employee is unable to work due to anxiety, depression and
medical issues/history. No further records available from this provider. Based
on the medical provided on appeal, there is a lack of condition severity,
worsening condition or impairment present to identify restrictions and/or
limitations from either a physical or mental/nervous standpoint. While it is
reasonable to treat with a specialist for chronic medical conditions, there is no
evidence to indicate a functional impairment. Although the employee reported
anxiety and depression with noted recommendations to psychiatry dating back to
11/2011, there is no indication that the employee sought treatment until 1/25/12
where the employee was seen by Gonzalez social worker. Considering the lack of
objective exam findings, not seeking treatment until 1/25/12, no further records
from social worker, the presence of depression or anxiety with medications would
not in and of itself support the need for restrictions and/or limitations. Any
restriction and/or limitation would depend upon the presence of sufficiently
frequent and severe symptoms along with corroborating mental status findings.
The notes do not document such findings as psychomotor agitation, deficits in*

*grooming or eye contact, deficit in cognition, thought disorder, memory or judgment. Therefore the medical records submitted on appeal do not suggest a level of functional impairment from either a physical or mental/nervous standpoint that would warrant restrictions and/or limitations.*

Our role in reviewing your file on Appeal is to determine whether your condition and the medical documentation contained in your file supports impairment that would preclude you from performing the duties of your own job beyond the last day worked and consecutively up to and/or beyond your benefit begin date of November 14, 2011.

Based on our appeal review, the medical evidence on file is insufficient to support your inability to perform the essential functions of your job as a logistics coordinator. Therefore, without proof of meeting the date of disability for any period after your last day worked, we are unable to alter the prior determination, and no benefits are payable. As such the denial of benefits was appropriate and is supported by the record.

LL-016-017 (emphasis supplied). The administrative determination that Ms. Fox did not meet the definition of disability under the Crayola STD Plan is consistent with the evidence developed during the review process undertaken by Liberty Life.

The decision of Liberty Life is supported by the opinions from two separate Nurse Care Managers in Liberty Life's Managed Care Department who reviewed her medical records during the administrative review process. Both nurses expressed conclusions in their respective summaries that notwithstanding any of her physical or emotional conditions, Ms. Fox was not suffering from any impairment which would prevent her from returning to work. These opinions provide a basis for Liberty Life's decision to deny Ms. Fox's claim, and its recommendation to Crayola to deny her administrative appeal.

Liberty Life's determination is consistent with the absence of any clinical or objective medical evidence reflected by the records received during the administrative review process. With respect to Ms. Fox's claim of depression, no treatment records were submitted

reflecting treatment by a psychologist or psychiatrist, nor were any psychological test results submitted reflecting cognitive deficiencies.  The administrative record shows that Ms. Fox did not seek treatment for her alleged depression with a psychologist or psychiatrist until January 25, 2012, after the initial determination denying her claim for STD benefits under the Plan.  See LL-049 (Mr. Gonzalez's 1/25/12 attending physician statement).  With respect to her physical conditions, the treatment notes received from her primary care physician concerning her thyroid condition do not reflect any significant impairments which would support a conclusion that she was incapable of returning to her Logistics Coordinator position.  McGee Decl., Ex. A, pp. LL-030-044.  The absence of clinical or objective evidence in support of her claims of physical and/or emotional impairments is significant given the requirement in the definition of "proof" under the plan that a claimant submit proof showing "the extent of your disability, including restrictions and limitations preventing you from performing your own job" and that a claimant submit "objective medical evidence of your disability that is satisfactory to us."  Vogel Decl., Ex. 1, p. C-011.  Given this language, it was reasonable for Liberty Life and Crayola to deny the claim based on Ms. Fox's failure to submit objective medical evidence during the administrative review process.

Further, the administrative determination is consistent with the position description summarizing the principal duties of Ms. Fox's Logistics Coordinator position, along with a job evaluation form which listed the physical requirements of the position.  See McGee Decl., Ex. A, pp. LL-051-054.  In its initial January 17, 2012 denial letter, Liberty Life summarized its conclusions concerning the requirements of Ms. Fox's Logistics Coordinator position as follows:

> Your job as a Logistics Coordinator requires you to maintain inventory accuracy, reconcile cycle counts and receiving discrepancies, insure constant flow of customer orders outbound and raw materials inbound, and direct material handler workforce to support daily shipping, receiving, warehousing and production procedures. Physical requirements of your job include constant sitting, occasional standing, walking and lifting up to 25 pounds.

LL-058.  During the course of the administrative appeal, Ms. Fox never challenged Liberty Life's conclusions concerning the principal duties associated with her position.

The administrative determination that Ms. Fox was capable of returning to work in her position as a Logistics Coordinator is supported by substantial evidence in the administrative record.  The decision denying Ms. Fox's claim for benefits under the Crayola STD Plan is supported by the record evidence.

> **D.    Ms. Fox Failed to Submit Objective Medical Evidence in Support of Her Claim for Benefits Under the Crayola STD Plan.**

The Crayola STD Plan specifically requires a claimant to submit satisfactory proof of her claim for benefits which is defined as including, "objective medical evidence of your disability." Vogel Decl., Ex. 1, p. C-011.  Ms. Fox failed to meet this requirement, and her failure to do so supports the administrative determination denying her claim.

Regarding Ms. Fox's alleged physical conditions, the records cited in her summary judgment brief establish that she decided to commence a leave of absence because of her own determination that she was under stress because of work issues and was "tired."  See, e.g., LL-0079 (11/4/11 office note stating that "[s]he wants to have one week off of work because she is so anxious working . . . a lot of stress being out of work"); LL-064-066 (11/22/11 office note stating that she "feels tired with many hypothyroid symptoms, including depression and unable to work" and that "[s]he is very teary today and too weak to work.  She is working on

25

seeing a psychiatrist").  Physical examination results on these office visits were generally

unremarkable and showed no significant abnormal conditions.  See LL-065 (stating the patient

"[d]enies chest pain or shortness of breath" and that "[t]he rest of the review of systems is

negative as patient has no other complaints").  Dr. Lee's Impression and Recommendation with

respect to Ms. Fox's depression on November 22, 2011 was that her depression was new and she

was "very teary and depressed.  On antidepressant.  Asked patient to f/u with Psychiatrists if

needed.  Asked patient to adhere to thyroid and diabetes treatment as uncontrolled glycemia and

hypothyroidism can lead to worsening depression."  See 11-066-067.   See also LL-005-006

(1/6/12 file note by Nurse Case Manager following record review, noting examination records

from Dr. Lee were unremarkable, and other than minor adjustments in medication levels did not

reflect any significant abnormalities); LL-002 (7/18/12 file note by different Nurse Case Manager

following file review, noting regarding physical conditions that "there is a lack of condition

severity, worsening condition or impairment" and "[w]hile it is reasonable to treat with a

specialist for chronic medical conditions, there is no evidence to indicate a functional

impairment").

       Ms. Fox did not seek or receive treatment from a psychiatrist or psychologist until

January 25, 2012, when she first visited Social Worker Thomas Gallagher more than two months

after she commenced her leave and after her claim for benefits had been denied by Liberty Life,

on.  See McGee Decl., Ex. A, pp. LL-0048-0049.  The administrative record contains no other

records of any follow-up treatments or other clinical or objective evidence supporting Ms. Fox's

claim that she was unable to work because of an emotional condition.  Based on the absence of

such records, the observations of Liberty Life's Nurse Case Manager following her review of Ms.

Fox's medical and psychological records was reasonable and correct: "Considering the lack of exam findings, not seeking treatment until 1/25, no further records from SW [i.e., Social Worker Gallagher], the presence of depression or anxiety with meds would not in and of itself support the need for [restrictions/limitations]." LL-002 (7/18/12 MDS note).

The paucity of the medical records summarized in Ms. Fox's Brief does nothing more than confirm the accuracy of the conclusion of Liberty Life and Crayola that at the time she commenced her leave of absence from Crayola on November 7, 2011, Ms. Fox was not suffering from any physical or emotional condition which prevented her from performing the material duties of her logistics coordinator position. The conclusion reached by Liberty Life that Ms. Fox's various conditions did not prevent her from performing the substantial and material duties of her Logistics Coordinator job is supported by the evidence developed during the course of the administrative review, including the opinions of the two Nurse Case Managers who reviewed all of Ms. Fox's relevant medical records, the summary of the duties of her job, and the objective medical evidence received by Liberty Life.

## V.     <u>CONCLUSION.</u>

Ms. Fox's Motion for Summary Judgment is granted to the extent that the Court applies the *de novo* standard of review in examining Ms. Fox's appeal from the denial of her application for short term disability benefits. Because the conclusion reached by Liberty Life that Ms. Fox's various conditions did not prevent her from performing the substantial and material duties of her Logistics Coordinator job is fully supported by the evidence received by Liberty Life during its administrative review, Plaintiff's Motion for Summary Judgment is denied in all

other respects.

The Defendants' Motion for Summary Judgment is denied to the extent that it seeks review by this Court using an arbitrary and capricious standard.  In all other respects, the Defendants' Motion is granted.  Accordingly, a judgment and order consistent with this Memorandum will be docketed separately.

BY THE COURT:

*/s/ Henry S. Perkin*
HENRY S. PERKIN
United States Magistrate Judge

28